# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**DERRICK LAMONT BARGE,**

      **Petitioner,**

**v.**                         **Case No.  3:11cv612/MW/CJK**

**MICHAEL D. CREWS,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION

Before the Court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254. (Doc. 1). Respondent filed an amended answer, submitting relevant portions of the state court record. (Doc. 24). Petitioner has not replied, although invited to do so. (*See* Docs. 19, 25). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts. The undersigned further concludes that the pleadings and attachments before the Court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

In February of 2008, petitioner was charged by Information filed in the Circuit Court for Escambia County, Florida, Case Number 08-CF-692, with Battery on a Law Enforcement Officer (Count 1) and Resisting an Officer with Violence (Count 2). (Doc. 24, Ex. A, p. 1).[1]   On March 5, 2008, the State filed a Notice of Intent to Seek Habitual Felony Offender Sentencing.  (Ex. A, p. 8).   The Notice was served upon petitioner's trial counsel on March 4, 2008.  (*Id.*).   After a jury trial held on July 8, 2008, (ex. B), petitioner was found guilty of both counts as charged.  (Ex. A, p. 30; Ex. B, pp. 171-72).   On September 2, 2008, petitioner was adjudicated guilty and sentenced as an Habitual Felony Offender ("HFO") to concurrent terms of ten years imprisonment on each count.  (Ex. A, pp. 40-47, 48-56).   Judgment was entered that date.  (*Id.*).   Petitioner's judgment of conviction was affirmed on direct appeal without a written opinion.  *Barge v. State*, 23 So. 3d 111 (Fla. 1st DCA 2009) (Table) (copy at Ex. E).

On February 4, 2010, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. G, pp. 31-57).   In an order dated May 4, 2010 (filed on May 10, 2010), petitioner's motion was stricken as facially insufficient, with leave given to file an amended motion.  (*Id.*, pp. 58-59).[2]   The order advised petitioner that "[t]he instant order does not constitute a final,

---

[1]All references to exhibits are to those provided at Doc. 24, unless otherwise noted.

[2]The court stated, in relevant part:  "Defendant's claims lack sufficient statements of prejudice required for this Court to evaluate Defendant's claims.  Consequently, in light of the court's finding that Defendant's claims are facially insufficient, and in keeping with the holding of Spera v. State, 971 So. 2d 754 (Fla. 2007), the instant motion is properly struck, **and it will not be considered on the merits** by the Court at this time."  (Ex. G, p. 58) (emphasis in original).

appealable order." (*Id.*, p. 59).

Petitioner filed another (essentially an amended) Rule 3.850 motion on June 1, 2010. (Ex. F, pp. 1-13). In an order dated August 9, 2010 (filed August 10, 2010), the state circuit court summarily denied relief without an evidentiary hearing, concluding that petitioner's motion was again facially insufficient and that because petitioner had previously been permitted leave to amend to file a facially sufficient motion, the motion should be denied with prejudice. (*Id.*, pp. 14-26).[3] The Florida First District Court of Appeal ("First DCA") affirmed the denial of postconviction relief, without a written opinion. *Barge v. State*, 53 So. 3d 1023 (Fla. 1st DCA 2011) (Table) (copy at Ex. J). The mandate issued March 2, 2011. (Ex. K).

On April 14, 2011, petitioner filed another *pro se* motion for postconviction relief under Fla. R. Crim. P. 3.850 (ex. L, pp. 1-13), accompanied by a motion for leave of court to file a successive Rule 3.850 motion (*id.*, pp. 14-15, 16-17). The state circuit court denied petitioner's motion for leave to file a successive motion and dismissed with prejudice petitioner's Rule 3.850 motion. (*Id.*, pp. 31-32). The First DCA affirmed without a written opinion, *Barge v. State*, 72 So. 3d 749 (Fla. 1st DCA 2011) (Table) (copy at Ex. O), with the mandate issuing November 15, 2011. (Ex. P).

Petitioner filed his federal habeas petition in this Court on December 20, 2011, raising five grounds for relief. (Doc. 1). Respondent asserts that petitioner is not

---

[3]The court stated, in relevant part: "Having reviewed Defendant's claims, the Court finds that Defendant has failed to present any facially sufficient claims in the instant motion. Moreover, a previous motion for postconviction relief, filed February 8, 2010, was struck as facially insufficient with leave to amend on May 4, 2010. Defendant has failed to plead cognizable postconviction claims in the instant motion. Consequently, the Court finds that the motion is properly denied with prejudice. See Spera v. State, 971 So. 2d 754 (Fla. 2007)." (Ex. F, p. 15).

entitled to relief on any of his claims, because they are procedurally defaulted and without merit. (Doc. 24).

## APPLICABLE LEGAL STANDARDS

Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1),[4] thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78. A claim that was not presented to the state court and

---

[4]Section 2254 provides, in pertinent part:

(b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

　　(A)  the applicant has exhausted the remedies available in the courts of the State; or

　　(B) (i)  there is an absence of available State corrective process; or

　　　(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S. Ct. 1728; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts). A claim is also considered procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303. In the second instance, the federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*,

250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower* , 7 F.3d at 210. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*.

# DISCUSSION

Ground One        <u>"Petitioner Was Denied The Effective Assistance Of Counsel Guaranteed By The Sixth Amendment Of The United States Constitution Where The Attorney Failed To Object To Habitual Felony Offender Treatment Without Any Prior Written Notice Of State's Intent To Seek Such Sentencing Causing Petitioner To Lose The Right To Defend"</u> (Doc. 1, p. 6).

Petitioner claims trial counsel was ineffective for failing to object to petitioner's adjudication as a Habitual Felony Offender on the grounds that petitioner was not provided prior written notice of the State's intent to seek enhanced sentencing, as required by state law. (Doc. 1, p. 6). To support this claim, petitioner alleges that although the State filed a Notice of Intent to Seek Habitual Felony Offender Sentencing ("Notice of HFO") and served a copy of the written Notice of HFO on defense counsel of record (Steven Bayhi) on March 4, 2008, Bayhi withdrew from representation on March 13, 2008, petitioner was never served with the written Notice of HFO, and neither Mr. Bayhi nor petitioner's subsequent attorney (Eugene Polk) ever mentioned the Notice of HFO to petitioner. (Doc. 1, p. 6). Petitioner alleges he was prejudiced by counsel's conduct, because he "los[t] the right to defend against such enhancement". (*Id.*). Petitioner asserts he exhausted this claim by presenting it to the state courts in his Rule 3.850 motion filed on June 1, 2010, and denied on August 9, 2010. (*Id.*, p. 7).

Respondent asserts a procedural default defense, arguing that petitioner did not properly present this claim to the state courts for adjudication. (Doc. 24, p. 13). Respondent alleges that petitioner raised this claim in his first Rule 3.850 motion filed on February 4, 2010, where he contended trial counsel was ineffective for failing to object to the State's attempt to enhance his sentence as an HFO without sufficient

notice.  The state court struck the motion as facially insufficient (expressly stating that it was not ruling on the merits) and granted petitioner leave to file a facially sufficient motion.  Respondent asserts that petitioner's June 1, 2010 amended motion did <u>not</u> assert the same claim petitioner presents here, but instead asserted, in petitioner's tenth ground for relief, that counsel was ineffective for failing to inform petitioner of the State's intent to seek habitual offender status (not that counsel was ineffective for failing to object to the State's attempt to enhance his sentence without sufficient notice).  (Doc. 24, pp. 13-14).  The state court denied the motion with prejudice on the grounds that petitioner failed to present any facially sufficient claims.  The First DCA affirmed.  Respondent argues that by not timely and properly presenting the state court with the claim petitioner presents here, petitioner procedurally defaulted his present claim and, because petitioner makes none of the requisite showings to excuse his default, the claim is barred from federal habeas review.  (*Id*., pp. 14–17).  Respondent alternatively argues that the claim fails on the merits.  (*Id*., pp. 17-18).

The Court need not resolve the exhaustion/procedural default issue, because petitioner's claim fails on the merits even on *de novo* review.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance claims.  A petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced the petitioner.  *Strickland*, 466 U.S. at 687.  "First, petitioner must show that 'counsel's

representation fell below an objective standard of reasonableness.  Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 2473, 91 L.Ed.2d 144 (1986) (*quoting Strickland*, 466 U.S. at 668, 694).

The record establishes, and petitioner does not dispute, that the State served its Notice of HFO on petitioner's counsel of record on March 4, 2008, which was six months prior to sentencing.  (Doc. 24, Ex. A, p. 8).  Although petitioner asserts that he, personally, was never served with the written Notice of HFO, and it appears that Florida's Habitual Felony Offender statute <u>does</u> require service of the written notice on both defense counsel <u>and</u> the defendant, Fla. Stat. § 775.084(3)(a)2,[5] petitioner does not allege that he timely informed either of his attorneys that he was not served with the written Notice of HFO, or that either of his attorneys reasonably could have learned that fact from another source.  The certificate of service included in the Notice of HFO stated that a copy of the notice was furnished to petitioner on March 4, 2008.  (Ex. A, p. 8).  Accordingly, petitioner fails to establish that Mr. Polk was deficient for failing to object on the grounds that the State failed to fully comply with the notice requirement of the statute.

As to petitioner's contention that Mr. Polk was ineffective for failing to inform him of the State's Notice of HFO, the record establishes that:  (1) petitioner had actual knowledge, well in advance of sentencing, of the State's intent to seek an enhanced sentence under the HFO statute and of the convictions the State intended

---

[5]Section 775.084(3)(a)2 provides:  "Written notice shall be served on the defendant and the defendant's attorney a sufficient time prior to the entry of a plea or prior to the imposition of sentence in order to allow the preparation of a submission on behalf of the defendant."

to use to qualify him as an HFO; (2) petitioner had an opportunity to defend against an enhanced sentence; and (3) petitioner stipulated to the prior convictions and to his qualification as an HFO. At the conclusion of trial on July 8, 2008, the trial court, in petitioner's presence after the verdict was rendered, discussed petitioner's sentencing and possible habitualization:

> MR. MCGRAW [Prosecutor]: Your Honor, just for the record, we did file our notice of intent to seek habitual traffic (sic) offender on the defendant so we probably need to set it for a sentencing date to prove up the HFO status.
>
> THE COURT: Well, I was thinking about returning it on docket day, getting a PSI, PSI is mandatory. You already filed that, habitualizing him?
>
> MR. MCGRAW: Initially when the case was first done it was filed March 4, 2008.
>
> THE COURT: Okay. Let's go ahead and order a presentencing investigation returnable back on August 21 at 9 o'clock, copy to the defense and the State. That will give us time to look at it. If the State's going to pursue the habitualization against you, sir, then we got that other case pending. I don't know what you want to do with it, whether or not, you know –
>
> . . . . [Discussion of petitioner's other pending criminal case]
>
> THE COURT: [S]o what you are talking about is habitualizing him not as a violent habitual offender but just as an habitual offender?
>
> MR. MCGRAW: Correct.
>
> THE COURT: You need to have the prior convictions that's going to make him qualify as that. So we will see. In the meantime, sir, we are going to get the presentence investigation, revoke his bond pending

sentence, and they will be out to the jail, the people that do the PSIs, the probation department will be out there, and they will get your version of anything you want to put in there, and we will have it, and we will handle the sentencing on that day if we can.

(Ex. B, pp. 173-75). Petitioner's sentencing was held approximately two months

later, on September 2, 2008. (Ex. A, pp. 40-46). The following exchange occurred:

THE COURT: We're going to handle [petitioner's sentencing] right now. We've got a PSI because the State filed a motion to determine that he's a habitual felony offender. They produced the prior convictions. We were actually going to have a hearing I think last --

MR. MCGRAW: Wednesday or Thursday?

THE COURT: Last week. One day it was set for last week. I guess it was set for Wednesday on our VOP and sentencing dates. The fingerprint guy was here and y'all basically stipulated that he meets the legal qualifications as being a habitual felony offender and Mr. Barge stipulated to that. That was all filed with the clerk. We got the PSI because it is required on a habitualization so that's where we are.

(Ex. A, pp. 41-42 (referencing Ex. A, pp. 33-39, an exhibit filed by the State on

Wednesday, August 27, 2008, establishing petitioner's qualification as an HFO)).

The sentencing court allowed the State, defense counsel and petitioner an opportunity

to be heard:

THE COURT: [W]hat does the State want to say concerning the sentence on Mr. Barge?

MR MCGRAW: The State believes that Mr. Barge's record speaks for itself. He's been in and out of trouble with the law for a long time now and we believe that the upper range of the sentencing options would be appropriate.

THE COURT: Is that it?

MR. MCGRAW:  That's it.

THE COURT:  What does the Defense want to say?

MR. POLK [Defense Counsel]:  Judge, again, I'm well aware of Mr. Barge's record as Mr. Barge is.  I think that that's sort of the mechanical and legal result would result in a ten-year maximum sentence in Mr. Barge's case.

THE COURT:  Would it be ten or would it be 20 if you ran them consecutive.

MR. MCGRAW:  I believe it would be 20 if you ran them consecutive.

MR. POLK:  If you ran it consecutive.  Again, Judge, I would ask that the Court not go all the way to the maximum in this case.  I realize Mr. Barge's record is what it is.

I think on one hand there's certainly a signal to be sent, but on the bottom hand I think if the courts in Florida impose the maximum indiscriminately or excessively it loses meaning with respect to the cases that are really, really out there and extreme.

I understand he's got quite a record but I don't think that he's the kind of person that, you know, would call for, the situation would call for the maximum punishment, Judge.

THE COURT:  What kind of person is?

MR. POLK:  Well, again, I think you've got people that, you know, harm individuals, physically harm children, murderers, that kind of thing.  I realize this is a serious offense, Judge, but again, I would ask the Court not go to the maximum on Mr. Barge's case.

THE COURT:  Okay.  Any comments, Mr. Barge, you would like to make before sentencing in the case?

THE DEFENDANT:  No.

(Ex. A, pp. 42-44).  The court adjudicated petitioner a habitual felony offender and sentenced him to concurrent terms of ten years imprisonment on each of the two offenses.  (*Id*.).

The foregoing conclusively refutes petitioner's claim that counsel's failure to inform him of the State's intent to seek enhanced sentencing under the HFO statute deprived him of his right to the effective assistance of counsel at sentencing. Regardless of whether Mr. Polk personally informed petitioner of the State's intent to habitualize him, both petitioner and defense counsel had actual knowledge, well in advance of sentencing, of the State's intent to seek an enhanced HFO sentence. Petitioner and defense counsel had an opportunity to prepare for the hearing, to contest petitioner's prior convictions and to contest petitioner's adjudication as an HFO.  Petitioner stipulated that he qualified as an HFO.  Petitioner, through defense counsel, was heard on the issue of whether an enhanced sentence was appropriate. Petitioner was given an opportunity to be heard personally on the issue.  Petitioner has not established deficient performance or prejudice under *Strickland*, and he is not entitled to federal habeas relief on Ground One.

Ground Two  "Petitioner Was Denied The Effective Assistance Of Counsel Guaranteed By The Sixth Amendment Of The United States Constitution Where The Attorney Failed To Object To The Admission Of Recorded Phone Conversation In Violation O[f] The Rights To Discovery".  (Doc. 1, pp. 7-9).

Although petitioner labels this claim as one involving counsel's failure to object to a recorded telephone conversation allegedly admitted into evidence, the actual claim presented in the body of petitioner's petition is that trial counsel was ineffective for failing to object to the introduction of a videotape of a "confrontation"

petitioner had with Escambia County Circuit Court Judge Linda Nobles during a hearing on a different criminal matter pending against petitioner. To put petitioner's claim into context and clarify its basis, the following background is provided.

Petitioner's charges of Battery on a Law Enforcement Officer and Resisting an Officer with Violence arose from an incident that occurred on February 7, 2008, when petitioner was being escorted from the courtroom after having appeared before Judge Nobles on a different criminal case. Petitioner and Escambia County Sheriff's Deputy Norman (Randy) Frye left the courtroom through a door that exited to a hallway which, in turn, eventually led to a secured "lock-up" area. In this hallway, petitioner allegedly battered Frye by "actually and intentionally touching or striking Norman (Randy) Frye without the consent of Norman (Randy) Frye or by intentionally causing bodily harm to Norman (Randy) Frye, while Norman (Randy) Frye was engaged in the lawful performance of his or her duties." (Doc. 24, Ex. A, p. 1). Petitioner was also alleged to have "resist[ed], obstruct[ed], or oppose[d] Norman Frye, Candace Freeman, Mike Miner, and/or Ray Griffith, a law enforcement officer employed by Escambia County Sheriff's Office, in the lawful execution of a legal duty, to-wit: attempting to remove Derrick Lamont Barge from a courtroom, by offering or doing violence to the person of said Norman Frye, Candace Freeman, Mike Miner, and/or Ray Griffith by fighting, struggling with, and/or attempted to strike said officers." (*Id.*). Petitioner's defense was that he did not intentionally strike or touch Deputy Frye, he merely bumped his [petitioner's] own shoulder as he was navigating a narrow space in the hallway, lost his balance, tried to regain it, and the next thing he knew Deputy Frye was taking him to the ground.

On the morning of trial, the parties discussed the State's intention to admit into evidence a courtroom videotape (with audio) capturing the events in the courtroom that transpired just before the incident.  (Ex. B, p. 28).  The parties agreed that the videotape was admissible and relevant to the issue of *mens rea*, but disagreed as to the appropriate starting point (i.e., the point at which the jury should begin to see what transpired in the courtroom).  Defense counsel explained:

> MR. POLK [Defense Counsel]:   We are going to stipulate to the admissibility of the tape overall.  The only question is when it begins.  And to summarize the events, what you will see on the tape is Mr. Barge is before the Court in front of the Honorable Judge Nobles.  She has denied a motion for bond he had filed.  He also requested and there was a Nelson hearing with respect to the representation he was having with his Public Defender.  That motion was denied also.  He starts to be led out of the courtroom.  He makes an intemperate comment. . . . He is brought back.  Judge Nobles discusses it with him and ultimately does not hold him in contempt and he is led towards the door a second time.  Whereupon, the incident we are here today about starts.
>
> My position is that the nature of that comment is intemperate.  I think something to the effect of, you know, this is quote pussy ass bullshit, unquote.  Something like that.  Again, I just don't see that that comment has any bearing on what happens, you know, a minute or 2 later as they go back into the security room.
>
> I think the video should start right after the comment.  So there is some context, but at the same time I think it's a 403 problem.  I think the probative value of hearing him make that comment is significantly and substantially outweighed by the danger of undue prejudice to Mr. Barge.

(*Id.*, pp. 28-29).  The trial court denied the motion, explaining, in relevant part:

> [I]t's certainly of evidentiary value, and the probative value showing what his frame of mind was as to subsequently what happened immediately after that is certainly relevant.  It's not outweighed in any

way.  It's certainly prejudicial to him.  If it wasn't prejudicial then the State wouldn't be wanting to offer it obviously.  I think it goes directly to the heart of the case as to what his frame of mind was. . . . [It] certainly shows a frame of mind prior to the incident beginning, which is certainly probative as to who might have started it.

(*Id*., pp. 29-30).  The videotape was admitted into evidence and played for the jury during the State's case-in-chief.  (*Id*., pp. 54-56).  Petitioner testified in his own defense.  During cross-examination, the following exchange occurred:

Q [Prosecutor Mr. McGraw]:  Now when Deputy Frye took you back [to the secured area off the courtroom], where did he grab you, where did he hold you?

A [Petitioner]:  Sir.

Q.  Where did he hold you?

A.  He was holding me in my back.

Q.  You didn't like it, did you?

A.  No, I did not.

Q.  In fact, you said, and when the Judge came off the bench, you said he was the one who was grabbing on me, isn't that right?

A.  Yes.

Q.  So you were mad at her ruling – I'm sorry you were agitated at her ruling?

A.  Yes, I was agitated at the ruling.

Q.  You didn't like being grabbed?

A.  No.  I don't like to be grabbed.

Q.  You never told the – when the Judge came in you never said that he was pushing me, he was shoving me?

A.  No.  I did not.

Q.  No, you said he was grabbing me?

A.  Yes.

Q.  Did Deputy Frye ever push you?

A.  I can't recall.

Q.  Just the next thing you know you were on the ground?

A.  Yes.

Q.  You testified that you don't feel comfortable with people on top of you, is that right?

A.  Right.

Q.  And you testified that when you went in you hesitated?

A.  Yes.

Q.  And the next thing you knew you were on the ground?

A.  Yes.

Q.  Your testimony is you never pushed back?

A.  No.  I did not.

. . . .

Q (By Mr. McGraw).  Sir, isn't it true that you bumped against Deputy Frye because he was grabbing you?

A.  No.

> MR. McGRAW:  Can we approach, Your Honor?

> THE COURT:  Sure.

> (At the bench:

> MR. McGRAW:  Your Honor, I played a jail phone call for Mr. Polk where we have Mr. Barge saying that he was grabbing on me, and I am not gong to have people grabbing on me and tugging on me.  I am going to ask him about that.  Obviously I don't want to do anything that's going to cause a mistrial.  I want to let the court know and Mr. Polk know about that before.

> THE COURT:  You heard that?

> MR. POLK [Defense Counsel]:  I think we have a problem with the Richardson issue.  I was only made aware of the existence of the telephone calls yesterday and you know obviously at that point, you know. we were on the verge of coming into the court. I think there's a telephone call that exists.  He gave me a CD.  I couldn't get them to play.  I don't dispute it.  He probably said it, but I don't know, I mean, again, these phone calls must have been made months and months ago, and again, I wasn't aware of their existence.

> THE COURT:  When did the State become aware of the telephone calls?

> MR. McGRAW:  It was probably a few weeks ago.

THE COURT:  If you were aware of the telephone calls, then this could be used in direct in this case – in the State's case in chief as well as rebuttal.  Why would you have not furnished a copy of [them] to the defense?

MR. McGRAW:  Your Honor, because I was not planning on using it in my case in chief.

MR. POLK:  Well, Judge, I think the case law is pretty clear there isn't a rebuttal exception to discovery rules, and you know, at this point what I would say for the record I would want to have a Richardson inquiry into this particular piece of evidence if the State intends to try to do anything with it at this point.

. . . .

THE COURT:  See, here's my problem.  I don't know that it's a Richardson violation.  What concerns me is a little bit on the analogy of somebody making a statement that's incriminating that was procedurally flawed as a result of like Miranda or something, and then they then choose to get on the stand and testify to something contrary to that.

MR. POLK:  Sure.

THE COURT:  Even if it's procedurally flawed, can the State then introduce that statement for impeachment purposes?  Assuming that it was not coerced or you know, assuming it was voluntary.  You were furnished a copy  of it prior to trial.  You had an opportunity to listen to the part that he is only going to examine him on, about, did you make this telephone call.  And of course if he denies it, that's another matter.  If he admits that he made the statement to ever who he was calling, that I don't want anybody putting their hands on me, et cetera, whatever the exact language is, you need to use the exact language to give him a chance to admit or deny it if we get into it.

MR. POLK:  Right.

THE COURT:  See, that concerns me.  I mean, he did furnish it to you.  Whether or not it was late, it could have been – whether or not he was obligated to furnish it to you, if he was not going to use it in his case in chief but for impeachment purposes, and even if it's procedurally flawed, can a defendant get on the stand and deny something under oath that there is impeachable testimony to the contrary that you can impeach him on and it's his own words?  It's not a third party you are calling in here.  It's his own words.  The recording itself advises him that it's being recorded.

. . . .

THE COURT:  The CD was provided to you before trial.

MR. POLK:  Yes, sir.

THE COURT:  Now whether or not it was exactly when the State got it, it was provided to you.  Y'all had an opportunity to listen to it.  It's not exculpatory.  It's incriminating.  And it's not going to be incriminating and the State was not going to use it in their case in chief and they did not.  They rested without it and it's only when a defendant or a witness gets on the stand and says something to the contrary that it even comes into play for impeachment purposes.  Now we stopped, you know, before we actually got into a lot of it in front of the jury, and Mr. Barge can continue his testimony, which we are going to call the jury back in, and he can continue his testimony, and he can either, you know, acknowledge that, you know, right after the incident happened that he placed a telephone call, that he talked with – I don't even know who it was – it might have been a friend or relative, and indicated that he had gotten in more trouble in the courthouse and that he wasn't going to have anybody pulling on him.  I mean that's what it says, I mean, it says what it says.

MR. POLK:  Right.  Absolutely, Judge.

> THE COURT: And if he acknowledges that, there's not anything to impeach him with. If he denies that, or course, I don't think there's a Richardson violation here, and I am going to take and deny the motion as it relates to a Richardson violation. And Mr. Barge can answer the questions on cross-examination as to the way he wants to answer them. Then the State can respond in kind. Okay. That's where we are.

(Ex. B, pp. 104-118). After cross-examination resumed, the prosecutor asked petitioner if he remembered making a phone call the day of the incident with Deputy Frye. Petitioner responded in the affirmative. The prosecutor asked petitioner if he remembered making the statement, "I ain't going to have no one pulling on me"? (*Id*., p. 119). Petitioner acknowledged making the statement. (*Id*., pp. 119-20). The recording of the telephone call was not played or entered into evidence. (*Id*., p. 120).

During closing argument, the prosecutor replayed the videotape. When the videotape was replayed it <u>ended</u> at a slightly different point and included a statement by petitioner, "He just grabbing me", along with Judge Nobles' response, "You stop it." (*Compare* Ex. B, p. 128 *with* Ex. B, p. 56). Defense counsel did not object. The prosecutor argued that petitioner's statement on the videotape, "He just grabbing me", and petitioner's trial testimony that after the incident he said "I ain't going to have no one pulling on me", evidenced that petitioner was angry with Frye and intentionally struck or touched Frye. (Ex. B, pp. 128-30).

Petitioner's claim in his federal habeas petition is that counsel was ineffective for failing to object to admission of the videotape on the grounds that it was irrelevant and unduly prejudicial. Petitioner argues that nothing depicted in the videotape evidenced a battery or resisting an officer with violence, and the videotape was highly prejudicial because it "cast[ ] Petitioner's character in a bad light". (Doc. 1, p. 8). Petitioner also asserts that counsel was ineffective for failing to object to the

inclusion of petitioner's statement "He just grabbing me" when the videotape was replayed during closing argument on the grounds that it exceeded that which was originally played for the jury. Petitioner argues that had counsel objected, "there's a reasonable probability sufficient to undermine confidence in the outcome where the state would have been unable to prove the scienter element or *mens rea* that Petitioner will [sic] and intentionally touched or struck the officer against his will." (*Id.*). Petitioner asserts that he exhausted this claim by presenting in the Rule 3.850 motion that was denied on August 9, 2010. (*Id.*, p. 9).

Respondent asserts a procedural default defense, arguing that petitioner's claim is not the same claim petitioner presented in his amended Rule 3.850 motion filed on June 1, 2010, and denied on August 9, 2010, as petitioner's claim there was that counsel should have filed a pre-trial motion to suppress the videotape on the grounds that it violated petitioner's right against self-incrimination. (Ex. F, p. 5). Respondent further contends that petitioner's present claim was not presented in his original February 4, 2010 motion that was stricken as facially insufficient, as petitioner's claim there was that counsel was deficient for failing to request a continuance or prepare a defense when the State "utilized incriminating phone calls at trial, that weren't properly disclosed during discovery". (Ex. G, p. 36). The only time petitioner attempted to raise the identical issues he now presents was when he included them in his second Rule 3.850 motion filed on April 14, 2011 (ex. L, pp. 6-8), but that motion was dismissed on the independent and adequate state procedural ground that it was successive. (Doc. 24, pp. 18-21). Respondent argues that by not timely and properly raising in state court the same claim petitioner presents here, petitioner procedurally defaulted his claim and, having made none of the requisite showings to excuse his default, is barred from having it reviewed on federal habeas.

(*Id*., pp. 21-23).  Respondent alternatively argues that the claim fails on the merits. (*Id*., pp. 23-26).

Petitioner's claim is procedurally defaulted.  The Court has carefully reviewed all three of petitioner's postconviction motions.  Petitioner did not present the issues he now raises in either his original or his amended Rule 3.850 motion.  (*See* Ex. G, pp. 31-57; Ex. F, pp. 1-13).  Petitioner did present these instances of ineffective assistance in his last Rule 3.850 motion filed on April 14, 2011.  (Ex. L, pp. 6-8).  The state court dismissed the motion as follows:

> In his "Motion for Leave of Court," Defendant requests that the Court grant him leave to submit a successive postconviction motion.  In the "Motion for Postconviction Relief," Defendant raises several claims of ineffective assistance of counsel.
>
> Florida Rule of Criminal Procedure 3.850(f) provides as follows:
>
> A second or successive motion may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, of [sic] if new and different grounds are alleged, the judge finds that the failure of the movant or the attorney to assert those grounds in a prior motion constituted an abuse of the procedure governed by these rules.
>
> New and different grounds are alleged in the instant motion.  However, Defendant states no reason why the instant claims could not have been alleged in his previous motions for postconviction relief.  Consequently, the Court finds the instant rule 3.850 motion to be successive, and further finds and concludes that it should be dismissed.

(Ex. L, pp. 31-32).  The First DCA summarily affirmed.

Florida's rule prohibiting the filing of successive postconviction motions is firmly established and regularly followed, and is adequate to support the state court's

judgment. *See* Fla. R. Crim. P. 3.850(f) (barring the filing of second or successive postconviction motions); *Christopher v. State*, 489 Fo. 2d 22, 25 (Fla. 1986). Petitioner has made none of the showings to excuse his default. Petitioner's procedural default bars federal habeas review of Ground Two.

Even if not procedurally defaulted, federal habeas review should be denied because petitioner's claim fails on the merits even on *de novo* review. *See* 28 U.S.C. § 2254(b)(2). Petitioner faults trial counsel for failing to object to admission of the videotape on the grounds that it was irrelevant and unfairly prejudicial. The record establishes that counsel did object, under Fla. Stat. § 94.403, to the inclusion of petitioner's "intemperate" remark at the beginning of the videotape on the grounds that its probative value was outweighed by the danger of unfair prejudice. *See* Fla. Stat. § 90.403 ("Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice."). To the extent petitioner contends counsel should have objected to the videotape in its entirety on grounds of relevance and unfair prejudice, his claim fails, as the videotape was certainly relevant to the issue of petitioner's state of mind and intent. Although the videotape was prejudicial, it was not unfairly so, and as Judge Nobles implied, all state evidence must be "prejudicial" in order to meet the standard of relevance in a criminal trial. Trial counsel cannot be ineffective for failing to make a meritless objection. *Freeman v. Attorney Gen., Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."); *see also Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (concluding that counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore*, 240 F.3d 907 (11th Cir. 2001) (concluding that counsel was not ineffective for failing to raise a non-meritorious objection); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir.

1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

As to the inclusion of petitioner's statement "He just grabbing me" in the replaying of the videotape during closing argument, even assuming *arguendo* that counsel could have objected on the grounds that the statement was not included in the videotape originally played for the jury and admitted into evidence, petitioner has not established he was prejudiced by counsel's failure to object. There is no reasonable probability petitioner would have been acquitted absent the statement "He just grabbing me", because petitioner testified on direct examination to essentially the same thing – that the officer must have grabbed him. (Ex. B, p. 97). In addition, petitioner stated during cross-examination that the deputy was holding on to him in the back and that he did not like it. (*Id*., pp. 102-03). Petitioner admitted that after the incident he stated during a telephone call discussing the incident that he "was not going to have anyone pulling on [him]." (*Id*., p. 119). In light of petitioner's repeated similar statements during his trial testimony – statements that by themselves were sufficient to establish the requisite *mens rea* – there is no reasonable probability petitioner would have been acquitted had counsel objected to inclusion of the additional statement "He just grabbing me" during the replaying of the videotape. Petitioner is not entitled to federal habeas relief on Ground Two.

Ground Three      "Petitioner Was Denied The Effective Assistance Of Counsel Guaranteed By The Sixth Amendment Of The United States Constitution Where The Attorney Failed To Prepare For Trial." (Doc. 1, pp. 9-10).

Petitioner claims trial counsel was ineffective for failing to prepare for trial by: (1) investigating petitioner's contention that there were two videocameras in the area of the hallway that were capable of capturing the incident and (2) deposing the State's

witnesses. Petitioner further claims trial counsel was ineffective during trial when he: (1) failed to object to Sgt. Griffin's conducting the jury's viewing of the scene, on the grounds that Griffin was one of the victims and (2) failed to ensure that the version of the videotape sent to the jury room was the properly redacted version. (Doc. 1, pp. 9-10). Petitioner asserts he exhausted this claim by presenting in the Rule 3.850 motion that was denied on August 9, 2010. (*Id.*, p. 10).

Respondent asserts a procedural default defense, arguing that petitioner did not raise any of these issues in his February 4, 2010 motion or in his amended June 1, 2010 motion, and raised them for the first time in his April 14, 2011 motion which was dismissed on the independent and adequate state grounds of procedural bar (Rule 3.850(f)'s prohibition on successive postconviction motions). (Doc. 24, pp. 26-29). Respondent argues that because petitioner makes none of the requisite showings to excuse his default, his claim is barred from federal habeas review. (*Id.*, pp. 29-30). Respondent argues in the alternative that the claim is without merit even if reviewed on the merits. (*Id.*, pp. 30-31).

Petitioner's claim is procedurally defaulted. Petitioner did not present the issues he now raises in either his original or his amended Rule 3.850 motion. (*See* Ex. G, pp. 31-57; Ex. F, pp. 1-13). Petitioner did present these instances of ineffective assistance in his last Rule 3.850 motion filed on April 14, 2011. (Ex. L, pp. 8-9). The state court dismissed the motion with prejudice on the independent and adequate state ground of Florida's procedural bar on the filing of successive postconviction motions (Rule 3.850(f)). (Ex. L, pp. 31-32). The First DCA summarily affirmed. Petitioner has made none of the requisite showings to excuse his default. Petitioner's procedural default bars federal habeas review of Ground Three.

Ground Four          "Petitioner Was Denied The Effective Assistance Of Counsel
                     Guaranteed By The Sixth Amendment Of The United States
                     Constitution Where The Attorney Failed To Object To The
                     And/Or Conjunction In His Charging Instrument And Subsequent
                     Jury Instructions." (Doc. 1, p. 11).

Petitioner claims trial counsel was ineffective for failing to object to use of the

conjunction "and/or" between the names of the alleged victims in Count 2 of the

charging document and in the corresponding jury instructions. Count 2 was the

charge of Resisting a Law Enforcement Officer with Violence. (Doc. 1, p. 11).

Petitioner asserts he exhausted this claim by presenting in the Rule 3.850 motion that

was denied on August 9, 2010. (*Id.*, p. 12).

Respondent asserts a procedural default defense, arguing that petitioner did not

raise any of these issues in his February 4, 2010 motion or in his amended June 1,

2010 motion, and raised them for the first time in his April 14, 2011 motion which

was dismissed on the independent and adequate state ground of procedural bar (Rule

3.850(f)'s prohibition on the filing of successive motions). (Doc. 24, pp. 31-34).

Respondent argues that because petitioner makes none of the requisite showings to

excuse his default, his claim is barred from federal habeas review. (*Id.*, pp. 34-35).

Respondent argues in the alternative that the claim is without merit even if reviewed

on the merits. (*Id.*, pp. 35-36).

Petitioner's claim is clearly procedurally defaulted. The Court has carefully

reviewed all three of petitioner's postconviction motions. Petitioner did not present

the issues he now raises in either his original or his amended Rule 3.850 motion. (*See*

Ex. G, pp. 31-57; Ex. F, pp. 1-13). Petitioner did present the issues in his last Rule

3.850 motion filed on April 14, 2011. (Ex. L, pp. 10-11). The state court dismissed

the motion with prejudice on the independent and adequate state ground of Florida's

procedural bar on the filing of successive postconviction motions (Rule 3.850(f)). (Ex. L, pp. 31-32). The First DCA summarily affirmed. Petitioner has made none of the requisite showings to excuse his default. Petitioner's procedural default bars federal habeas review of Ground Four.

Ground Five          "Petitioner Was Denied The Effective Assistance Of Counsel Guaranteed By The Sixth Amendment Of The United States Constitution Where The Attorney Failed To Ensure The Existence Of A Fair And Impartial Jury Of His Peers." (Doc. 1, p. 12).

Petitioner's final ground for relief is that trial counsel was ineffective for: (1) failing to object and move to strike the jury panel when, during voir dire in the presence of the entire panel, a prospective juror stated: "I think Mr. Barge was housed at the Road Prison"; and (2) failing to request a strike for cause or request an additional peremptory strike on Juror Sexton who stated that he was best friends with law enforcement officials and his relationship with them might affect his ability to be fair. (Doc. 1, p. 12). Petitioner asserts that had counsel objected, "there remains a reasonable probability Petitioner would've been tried to an impartial jury, preserving his right to a fair trial." (*Id*.). Petitioner asserts he exhausted this claim by presenting it in the Rule 3.850 motion that was denied on August 9, 2010. (*Id*., p. 13).

Respondent asserts a procedural default defense, arguing that petitioner did not raise these issues in his February 4, 2010 motion or in his amended June 1, 2010 motion, and raised them for the first time in his April 14, 2011 motion which was dismissed on the independent and adequate state ground of procedural bar (Rule 3.850(f)'s prohibition on successive motions). (Doc. 24, pp. 36-39). Respondent argues that because petitioner makes none of the requisite showings to excuse his default, his claim is barred from federal habeas review. (*Id*., pp. 40-44).

Petitioner's claim is procedurally defaulted.  Petitioner did not present the issues he now raises in either his original or his amended Rule 3.850 motion.  (*See* Ex. G, pp. 31-57; Ex. F, pp. 1-13).  Petitioner did present the issues in his last Rule 3.850 motion filed on April 14, 2011.  (Ex. L, p. 5).  The state court dismissed the motion with prejudice on the independent and adequate state ground of Florida's procedural bar on the filing of successive postconviction motions (Rule 3.850(f)).  (Ex. L, pp. 31-32).  The First DCA summarily affirmed.  Petitioner has made none of the requisite showings to excuse his default.  Petitioner's procedural default bars federal habeas review of Ground Five.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to

this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1. That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Derrick Lamont Barge* in the Circuit Court for Escambia County, Florida, Case Number 08-CF-692 be DENIED, and the Clerk be directed to close the file.

2. That a certificate of appealability be DENIED.

At Pensacola, Florida this 25th day of October, 2013.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).